UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., DONALD HAYWOOD, R47947, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 13 C 5362 |
| TARRY WILLIAMS,[1] Warden STATEVILLE CORRECTIONAL CENTER, | ) ) ) | Judge Rebecca R. Pallmeyer |
| Respondent. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Donald Haywood is serving a 55-year sentence for first-degree murder at the Stateville Correctional Center. He now seeks relief pursuant to 28 U.S.C. § 2254 on the grounds that (1) his trial counsel was ineffective because she conceded his guilt in her closing statement, and (2) his 55-year sentence violates the Eighth Amendment because Haywood was just 17 years old at the time of the crime. Respondent Tarry Williams, the warden at Stateville, contends that Haywood's Sixth Amendment claim is without merit and that his Eighth Amendment claim is procedurally defaulted. The court agrees with Respondent, dismisses Haywood's habeas petition [1] and declines to grant a certificate of appealability. Haywood requested that the court appoint an attorney to pursue this petition [15], but the court denies that motion: there is no right to post-conviction counsel in collateral proceeding, and appointing counsel in this case could not save Haywood's meritless petition.

## BACKGROUND

### I. Conviction

Petitioner was convicted of first-degree murder on an accountability theory on August

---

[1] During the pendency of this case, Tarry Williams replaced Michael Magana as Petitioner's custodian at the Stateville Correctional Center. Williams has been substituted as the proper Defendant. *See* FED. R. CIV. P. 25(d)(1).

1

10, 2015. (Petition [1], 1.) On habeas review, federal courts presume the factual findings made by state courts are correct unless those findings are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy,* 690 F.3d 811, 815 (7th Cir. 2012). Petitioner does not contest the state court's factual findings, and the court, therefore, draws the facts that follow from the Illinois Appellate Court's decisions affirming Haywood's conviction on direct appeal and reviewing Haywood's state post-conviction petition. (*People v. Haywood*, Nos. 1-05-4075, 1-06-0200 (Consol.) (Ill. App. Ct. 1st Dist. Jan. 23, 2008), Ex. A to State Ct. Record [20-1], hereinafter "Direct Appeal Op."; *People v. Haywood*, No. 1-11-1554 (Ill. App. Ct. 1st Dist. Dec. 24, 2012), Ex. G to State Ct. Record [20-2], hereinafter "Post-Conviction Appellate Op.")

On the evening of July 5, 2003, Donald Haywood and his older brother, Karl Haywood, agreed to rob a taxicab driver. Petitioner planned to act as the lookout. Karl called and ordered a cab to their residence at 7752 South Essex Avenue in Chicago. While waiting for the cab to arrive, Karl gave Petitioner a gun to hide in the waistband of his pants. Once the cab arrived, the brothers got in the vehicle, Karl in the front seat and Petitioner in the back. While riding, Karl signaled to Petitioner, who handed the gun to him in the front seat. Karl pointed the gun at the driver, Ruby Lasecki, and ordered her to pull into a parking lot. She complied, and Karl ordered her to remove her jewelry, including a gold chain, a gold bracelet, and several rings. Karl removed the money from Lasecki's wallet and handed the jewelry, the money, and the gun to Petitioner. Karl walked to the driver's door, opened it, and rifled through a white bag he found near the driver's feet. While Karl was looking through the bag, Petitioner exited the vehicle. Karl instructed Petitioner to shoot the driver, but Petitioner refused. Karl repeated the order, and Petitioner again refused. Karl grabbed the gun from Petitioner and as Petitioner walked away, he heard the driver say, "don't shoot," and sound her horn. He then heard a single gunshot. The brothers ran through an alley away from the cab. As they ran, Karl handed Petitioner the gun, which Petitioner later threw away in a nearby park.

Later that evening, around 8:40 p.m., Officer David Hickey saw Petitioner standing on a

porch holding a firearm. According to Hickey, when Petitioner realized he had been spotted, Petitioner ran off the porch into the street and shoved the gun into the waistband of his pants. Hickey began to chase him and called for assistance. A few minutes later, Hickey heard a message that an individual matching Petitioner's description was being detained at 1428 South Central Park. When Hickey arrived at that location, he saw Petitioner sitting in a squad car, no longer in possession of a gun. Hickey contacted Officer James Rowan, a canine officer, to search for the missing weapon. Ten minutes after the search commenced, a .380 caliber semiautomatic handgun was recovered in a vacant lot at 1426 South Central Park.

Following Petitioner's arrest, Sergeant Sam Cirone met with him in an interview room at police headquarters. Sergeant Cirone observed that Petitioner was wearing a gold chain and bracelet, which were removed and inventoried. After recovering the jewelry, at approximately 3:30 a.m. on July 6, 2003, Cirone interviewed Petitioner's brother, Karl Haywood, who was also in custody. After speaking with Karl, Cirone returned to Petitioner's interview room. Assistant States Attorney David Weiner joined Cirone in the interview room, informed Petitioner of his *Miranda* rights, and explained the ways that Petitioner could memorialize his statements. Petitioner chose to have his statement videotaped; in that statement, he admitted in detail to his involvement in the robbery.

Petitioner's trial counsel moved to suppress the videotaped confession, arguing it was involuntary because the police ignored his repeated requests for an attorney and because he was subjected to physical and mental coercion. Following a hearing, the trial court denied the motion, finding that the statement was given voluntarily. In addition to the confession, the prosecution presented several other pieces of evidence. Two eyewitnesses testified, offering accounts that substantially conformed to the version of events Petitioner admitted in his confession. Moreover, each eyewitness had previously identified Karl Haywood in a lineup, and one eyewitness had also identified Petitioner from a lineup as the person she saw fleeing the scene of the crime. The dispatcher from the cab company, who had known the victim for 25

3

years, testified that she had dispatched the cab to Petitioner's residence at 7752 South Essex Avenue. The dispatcher was also able to identify the jewelry that had been recovered from Petitioner as belonging to the victim. A ballistics expert traced the bullet recovered in the autopsy to the .380 gun retrieved from the park, which Petitioner admitted to discarding. The parties stipulated that a trained forensic investigator, who recovered fingerprints from the cab, would testify that those fingerprints matched Petitioner's. Defense counsel cross-examined each witness and made relevant objections during the State's presentation.

After the State's presentation, defense counsel moved for a directed verdict, arguing that the State had failed to satisfy its burden of proof. The trial court denied the motion. Petitioner declined to testify and defense counsel informed the court that she would not be presenting any evidence. During her closing statements, defense counsel characterized the case as one about "two brothers, two different people, two separate individuals, [Karl] who would shoot Ruby Lasecki in cold blood and [defendant] who on orders from his brother two times would not pull the trigger." (Direct Appeal Op. at 8) (alterations in original.) She urged that Petitioner did not know that Karl intended to kill Lasecki and stated:

> Now, [defendant's] statement, and it is a truthful statement, ladies and gentlemen, he tells you what happened. If he was going to lie about his statement, he wouldn't have said he had the gun at any point, he could have taken himself out of, but he didn't, he told the truth, and he told the truth, he never said he rifled through rub [sic] Ruby Lasecki's purse. [Defendant] said, 'I am a look-out. [K]arl Haywood, my big brother, he's going to do the robbery,' and in Donald Haywood's eyes, he is not part of the robbery, that's separate from him, he's not part of the robbery, and he definitely, you heard from his statement, he never agreed to be part of the shooting.

(*Id.* at 9) (alterations in original.) Defense counsel urged the jury to return a verdict of not-guilty. The jury received instructions on the law of accountability, and after deliberation, found petitioner guilty of first-degree murder.

At sentencing, the court considered a presentence report that showed that Petitioner was a former member of the Four Corner Hustlers gang, but that he had no prior felony convictions. Petitioner characterized his childhood as "OK" until the death of his father, after

4

which his mother became addicted to cocaine. Officer Hickey testified that he observed Petitioner fire a semiautomatic handgun—the same one that had been used to shoot Lasecki earlier that evening—at a witness named Benny Hunter. The State requested the 60-year statutory maximum, arguing that Officer Hickey's testimony and Petitioner's membership in the Four Corner Hustlers gang showed that Petitioner had no concern or feelings toward his fellow human beings. Defense counsel argued for the statutory minimum, 20 years, emphasizing Petitioner's age at the time of the crime, the loss of his father at an early age, and his mother's cocaine addiction. Petitioner was effectively raised by his older brother Karl, defense counsel continued, who was "probably the worst influence somebody could have." Defense counsel maintained that Petitioner only shot at Hunter because he felt he had something to prove after defying Karl's orders to shoot Lasecki earlier. Haywood then apologized to the victim's family. The court sentenced Petitioner to 55 years in prison, explaining that Petitioner's expression of remorse supported a reduction from the 60-year maximum the court would otherwise have imposed.

**II.** **Direct Appeal**

Petitioner presented his ineffective assistance argument on direct appeal. He claimed that trial counsel was ineffective under *United States v. Cronic*, 466 U.S. 648 (1984), or *Strickland v. Washington*, 466 U.S. 668 (1984), for effectively conceding Petitioner's guilt when she told the jury that his confession was truthful. *Strickland* established a two-pronged test for determining whether a defendant's right to effective assistance of counsel has been violated. A defendant must show "that his counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced as a result." *Jones v. Butler*, No. 14-1638, — F.3d —, 2015 WL 430436, at *6 (7th Cir. Feb. 3, 2015) (citing *Strickland*, 466 U.S. at 687–88). *Cronic* carved out a narrow exception to the *Strickland* test in circumstances where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. In those circumstances, prejudice is presumed and the defendant need not make a

5

separate showing under the second prong. *Id.*

The state appellate court affirmed Haywood's conviction on January 23, 2008, rejecting his ineffective assistance of counsel claims. First, the Illinois court concluded that the *Cronic* exception did not apply:

> [A]lthough trial counsel conceded the veracity of defendant's statement, we cannot say that she completely failed to subject the State's case to meaningful adversarial testing. The record reveals that trial counsel filed various pre-trial motions, including a motion to suppress defendant's incriminating statement, made relevant objections at trial, cross-examined each of the State's witnesses, moved for a mistrial when Officer Hickey offered testimony that violated the trial court's prior ruling on a motion *in limine*, moved for a directed verdict at the conclusion of the State's case, and delivered opening and closing arguments urging the jury to find defendant 'not guilty.'

(Direct Appeal Op. at 14.) The court, therefore, analyzed Petitioner's claim according to the *Strickland* test, but concluded that Petitioner had not satisfied either prong of that test. First, the Appellate Court reasoned that trial counsel's decision to admit Petitioner's participation in the robbery was an objectively reasonable strategy: "juries have the power to return verdicts which defy the facts and the law, and . . . counsel may entertain a desperate hope that the jury will acquit a defendant on the basis of extraneous factors." (*Id.* at 16) (quoting *People v. Montanez*, 281 Ill. App. 3d, 558, 564–65 (Ill. App. Ct. 1st Dist. 1996)) (internal quotations and alterations omitted.) Significantly, trial counsel's motion to suppress the confession had already been denied. In her closing, counsel attempted to make the best of this, arguing that Petitioner's words established that his involvement was no more than minimal. This approach was not only a prudent one; it may have been the only viable strategy available to Petitioner. (*Id.* at 13.) The Illinois Appellate Court noted, further, that "[t]his is the same strategy upheld by our supreme court in" *People v. Williams,* 192 Ill. 2d 548, 568 (2000) and *People v. Shatner*, 174 Ill. 2d 133, 148 (1996), and explained that such a strategy was particularly appropriate where, as here, "the evidence against defendant was overwhelming." (*Id.* at 16.) The magnitude of evidence of Petitioner's guilt also defeated the second prong of the *Strickland* test: "even if counsel acted unreasonably, defendant's ineffective assistance of counsel claim necessarily fails because he

6

cannot satisfy the prejudice prong." (*Id.* at 16–17.)

### III. Post-Conviction Review

On February 17, 2009, Petitioner filed a *pro se* post-conviction petition in Illinois Circuit Court, which was subsequently amended in January 2011, by appointed post-conviction counsel. (Post-Conviction Appellate Op. ¶ 8.) The amended petition argued that appellate counsel was ineffective for failing to challenge petitioner's 55-year sentence as excessive in light of petitioner's age and potential for rehabilitation. (*Id.*) The trial court granted the State's motion to dismiss the post-conviction petition and Petitioner appealed, again arguing that appellate counsel was ineffective for failing to challenge the sentence as excessive. (*Id.* ¶¶ 8–9.)

On appeal, the Illinois Appellate Court again analyzed Petitioner's claims under *Strickland* and concluded that it was reasonable for appellate counsel on direct appeal not to argue that the 55-year sentence was excessive: a trial court has broad discretion in sentencing, and the sentence fell within the statutory range. (*Id.* ¶¶ 14–15.) Moreover, the trial court was presented with mitigating factors, including Petitioner's age and potential for rehabilitation. (*Id.* ¶¶ 16–17.) The court affirmed the dismissal of Haywood's post-conviction petition because it could not "say that a prison sentence of 55 years was an abuse of discretion," and there was "nothing in the record to indicate that the trial court did not take these factors into consideration when determining his sentence." (*Id.* ¶¶ 16–17.) Indeed, the trial court explicitly reduced the sentence in light of Petitioner's expression of remorse. Thus, appellate counsel's decision not to raise that issue was objectively reasonable.

Petitioner filed a petition for leave to appeal (PLA) with the Illinois Supreme Court, urging once more that appellate counsel on direct appeal was ineffective for failing to challenge the 55-year sentence as an abuse of discretion. (Pet. for Leave to Appeal, Ex. K to State Ct. Record [20-2].) The Illinois Supreme Court denied the PLA on March 27, 2013. (*People v. Haywood*, No. 115455 (Ill. Mar. 27, 2013), Ex. L to State Ct. Record [20-3].)

**DISCUSSION**

On July 26, 2013 Petitioner timely filed this *pro se* habeas petition. He has requested that this court appoint counsel for these proceedings, but the court declines to do so. First, the court notes that Petitioner has no right to counsel in his federal habeas proceedings. *Kitchen v. United States*, 227 F.3d 1014, 1018 (7th Cir. 2000) ("[O]nce the direct appeal has been decided, the right to counsel no longer applies."). Moreover, Petitioner's *pro se* filings sufficiently alerted the court to the substance of his claims. Finally, as explained below, Petitioner's claims are meritless and the court is confident that appointing counsel would not alter the outcome.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs the standards for federal habeas relief from a state-court conviction and sentence. 28 U.S.C. § 2254. Under § 2254, a federal court may grant a writ of habeas corpus to a petitioner in custody pursuant to a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Haywood raises two claims: (1) that his trial counsel was ineffective, in violation of the Sixth Amendment, because she conceded his guilt in her closing statement, and (2) that his 55-year sentence violates the Eighth Amendment because Haywood was 17 years old at the time of the crime. As explained below, neither claim supports habeas relief.

**I.     Claim One: Ineffective Assistance of Counsel**

Petitioner first urges that his trial counsel was ineffective for effectively conceding his guilt in her oral arguments. (Petition at 5.) The Illinois Appellate Court considered and rejected this argument on direct appeal. (Direct Appeal Op. at 14–17.) Under § 2254(d), a habeas petitioner cannot prevail on a claim that was previously adjudicated on the merits in state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). *See Richardson v. Lemke*, 745 F.3d 258, 273 (7th Cir. 2014). This court's review of a previously adjudicated claim is highly deferential: "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Moreover, this court's review is limited to the record that was before the Illinois Appellate Court. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

The state court's analysis of Haywood's ineffective assistance of counsel claim easily survives this deferential review. The state court correctly articulated and applied the Supreme Court standards governing ineffective assistance of counsel claims. (Direct Appeal Op. at 10–11) (addressing *United States v. Cronic*, 466 U.S. 648 (1984) and *Strickland v. Washington*, 466 U.S. 668 (1984).) It reasoned that *Strickland,* not *Cronic*, governed its analysis because trial counsel's performance did not amount to a complete denial of counsel. This is a reasonable conclusion: The Supreme Court has held that a "concession of . . . guilt does not rank as a failure to function in any meaningful sense as the Government's adversary," particularly in cases such as this one where "the defendant's guilt is . . . clear." *Florida v. Nixon*, 543 U.S. 175, 190–91 (2004) (internal quotations and alterations omitted). The Illinois Appellate Court's decision appears to follow directly from the reasoning in *Nixon*, and is a reasonable application of federal law.

Moreover, even if *Nixon* could be factually distinguished, the issue of whether the *Cronic* exception applies in these circumstances is, at best, an open question. The Supreme Court has cautioned that whether *Cronic* applies to a particular case is a fact-dependent question, and that "[o]ur cases provide no categorical answer." *Wright v. Van Patten*, 552 U.S. 120, 125 (2008). Where there is "no clear answer to the question presented . . . it cannot be said that the state court unreasonably applied clearly established Federal law." *Id.* at 126 (quoting *Carey v.*

*Musladin*, 549 U.S. 70, 77 (2006)) (internal alterations omitted). Finally, the multiple Illinois Supreme Court cases that the Illinois Appellate Court relied on establish, at a minimum, that reasonable jurists could conclude that the *Cronic* exception does not apply here. The Illinois court's conclusion that *Strickland* governs is not contrary to, or an unreasonable application of, federal law.

Nor was the Illinois Appellate Court's application of *Strickland* unreasonable. First, the state court correctly concluded that Petitioner's counsel provided objectively reasonable representation. Specifically, it reasoned that in light of the overwhelming evidence against Petitioner, including his own videotaped confession, trial counsel's pursuit of jury nullification was an acceptable strategy. This court agrees: trial counsel had to grapple with the confession and she did her best to turn it to Petitioner's advantage. The Illinois Appellate Court's conclusion is, therefore, consistent with *Nixon* and the governing Supreme Court case law applying *Strickland*. Second, regardless of whether counsel was ineffective, the state court's conclusion that Petitioner was not prejudiced was amply supported by the record before it. To show prejudice, Petitioner "must demonstrate a reasonable probability that had it not been for his lawyer's ineffectiveness the outcome at trial would have been different." *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). Moreover, the "determination that a defendant was not prejudiced by his lawyer's ineffectiveness is entitled to great weight in a federal habeas corpus proceeding, as emphasized with rather unexpected vigor by the Supreme Court [in *Harrington v. Richter*, 562 U.S. 86 (2011)]." *Price*, 637 F.3d at 839. On the record before the Illinois Appellate Court, proving prejudice was a monumental task for Petitioner: The evidence was, as the state court observed, overwhelming—an eyewitness saw Petitioner fleeing the scene of the crime, Petitioner's fingerprints were found inside the cab, the ballistics expert confirmed that the fatal bullet came from the gun Petitioner admitted discarding, Petitioner provided a detailed confession describing his involvement in the robbery, and he was found wearing the victim's jewelry. This court is confident that, regardless of trial counsel's closing statements, the

outcome would have been the same. Petitioner's ineffective assistance of counsel claim must fail.

## II.     Claim Two: Eighth Amendment Violation

Petitioner next asserts that his 55-year sentence amounts to cruel and unusual punishment in violation of the Eighth Amendment. Because Petitioner has raised this claim for the first time in his federal habeas petition, the court will not consider it. *See Coleman v. Lemke,* 739 F.3d 342, 349 (7th Cir. 2014). Ordinarily, when a petitioner seeks to raise, in his federal petition, a claim that was not raised in state court (either on direct appeal or in the state's post-conviction proceedings), that claim is procedurally defaulted and the federal court will not review it. *Richardson,* 745 F.3d at 268. The court will excuse procedural default only if a petitioner can demonstrate (1) "cause for and prejudice from the default," or (2) that the court's failure to consider the claim will result in "a fundamental miscarriage of justice." *Richardson,* 745 F.3d at 272.

Petitioner did not challenge his sentence on direct appeal, and though he did object to the length of his sentence in the post-conviction proceedings, he did not invoke the Eighth Amendment. Rather, the basis for his post-conviction challenge was that the trial court abused its discretion by imposing a 55-year sentence and that his appellate counsel was ineffective for failing to challenge the sentence as an abuse of discretion. These allegations did not "fairly present" his Eighth Amendment claim to the state court.

> [F]our factors . . . bear upon whether the petitioner has fairly presented the claim in state court: (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). None of these factors support Petitioner's position. Petitioner did not cite relevant state or federal cases applying a constitutional analysis. He framed each objection to his sentence in "abuse of discretion" language, making no mention

12

of the Eighth Amendment or of "cruel and unusual" punishment.  In his post-conviction appellate brief, for example, Petitioner described the issue presented for review as whether there was a substantial showing "that his appellate counsel was ineffective in failing to challenge his 55-year sentence as an abuse of discretion given his limited participation in the robbery, young age, troubled upbringing and lack of criminal history."  (Brief and Argument for Petitioner-Appellant, Ex. H to State Ct. Record [20-2], 2; *see also id.* at 11, 13–14, 16–22 (analyzing sentence under "abuse of discretion" standard).)  In his reply brief, similarly, Petitioner urged the Appellate Court to reduce the sentence because the trial court had "abused its discretion."  (Reply Brief and Argument for Petitioner-Appellant, Ex. J to State Ct. Record [20-2], 1.)  This is insufficient to present an Eighth Amendment claim:  "'Abuse of discretion' and 'improper factors' are not terms that Illinois lawyers and judges, by quirk of local legal idiom, use to articulate constitutional arguments."  *Wilson*, 243 F.3d at 328.  Petitioner failed to present his federal claim to the state courts and has procedurally defaulted that claim.  Petitioner has not alleged any cause for his failure to present his Eighth Amendment claim and the default cannot be excused.

Finally, even if Petitioner had preserved his Eighth Amendment claim, he would not be entitled to relief.  The Eighth Amendment prohibits only death sentences and sentences of mandatory life in prison without parole for juvenile offenders.  *Miller v. Alabama,* 132 S. Ct. 2455, 2463–64 (2012).  The Eighth Amendment extends no further: It does not prohibit discretionary life sentences for juveniles, *Croft v. Williams*, 773 F.3d 170, 171 (7th Cir. 2014), let alone the discretionary 55-year sentence the trial court imposed here.  Haywood's Eighth Amendment claim is meritless.

### III.     Certificate of Appealability

The court declines to issue a certificate of appealability.  A certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A substantial showing exists only where "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

13

that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court's ruling is not one that jurists of reason would find debatable.

## CONCLUSION

The court denies Haywood's habeas corpus petition [1] and declines to issue a certificate of appealability. Petitioner's motion for attorney representation [15] is denied as moot.

ENTER:

Date: March 11, 2015

REBECCA R. PALLMEYER
United States District Court